Bradbury, J.
Both actions originated in exceptions filed to the respective accounts of the plaintiffs in error in the probate court of Greene county.
In the first of the two, Collins, Executor, v. Millen et al., Mr. Collins, as executor of Catharine Collins, filed in the probate court, an account of his transaction in the usual form, charging himself with the receipt of certain moneys, and claiming credit for certain expenditures and payments made on behalf of his trust. To this account, Eli Millen and others, who were creditors of deceasd, filed exceptions, alleging that the executor had failed to charge himself with certain moneys belonging to the estate, which he had received, and had taken credit for payments improperly made. Upon the hearing- of these exceptions, they were in part sustained. The executor feeling aggrieved by the action of the probate court in this regard, gave notice of his intention to appeal the case to the court of common pleas. So far as the record discloses, the appeal was in all respects perfected by him, except that he gave no bond. A transcript of the journal entries in the probate court, together with the original' papers, was filed in the court of *291 common pleas; whereupon the exceptors, Millen and others, now defendants in error, filed in the court of common pleas, a motion to dismiss the appeal, for the reason that the appellant, the executor, had not given an appeal bond. This motion was sustained and the appeal dismissed by the court of common pleas, for the reason assigned in the motion. The circuit court, on error, affirmed the judgment of the court of common pleas, whereupon the executor instituted in this court proceedings to reverse the judgment of both the circuit court and the court of common pleas. The question raised in the second case, is, in all essential respects, similar, and its determination rests upon the identical priuciples that control the first case, so that it will not be farther noticed.
The only question presented by the record for determination here, is, whether the court of common pleas erred in dismissing the appeal from the probate court.
The right of appeal is statutory, and we must look to the statutes to ascertain if it has been lawfully exercised. The party who seeks to exercise this right, must comply with whatever terms the statutes of the state impose upon him as conditions to its enjoyment. The right, doubtless, is remedial in its nature; it is a proceeding in a civil action, given by our Code of Civil Procedure, and falls within the letter and spirit of section 4948, Revised Statutes, which commands a liberal construction of the provisions of our Civil Code.
This court has heretofore recognized these liberal principles in a number of cases respecting steps necessary to perfect an appeal, and has been especially liberal in sanctioning amendments made to cure defects in the methods that parties have *292 pursued in exercising this right of appeal. Negley v. Jeffers, 28 Ohio St., 90; Irwin v. Bank of Bellefontaine, 6 Ohio St., 81; Saterlee v. Stevens, 11 Ohio, 420; Johnson v. Johnson, 31 Ohio St., 131; Watts v. Shewell, 31 Ohio St., 331; Reid v. Quigley, 16 Ohio, 445; Church v. Nelson, 35 Ohio St., 638; Creighton v. Hardin, 10 Ohio St., 579; Bentley v. Dorcas, 11 Ohio St., 398; Propeller Ogontz v. Wick, 12 Ohio St., 333.
We bring with us to the consideration of the question involved in the case before the court, the same liberal views that our predecessors held, and announced in the foregoing as well as other similar cases, touching the question of perfecting appeals, that, by inadvertence, had been irregularly taken.
We recognize, however, that the courts can dispense with no condition prescribed by statute, as necessary to perfect an appeal, and that the only field open to the display of liberality in this connection is, in the construction of the statutes that prescribe these conditions.
The appeal in question, was taken from a judgment of the probate court rendered in the course of settling, an account of the plaintiff in error, as an executor, and the steps required to perfect it, are prescribed by section 6408, Revised Statutes, which reads as follows: “Section 6408. The person desiring to take an appeal, as provided in the preceding section, shall, within twenty days after the making of the order, decision, or decree, from which he desires to appeal, give a written undertaking * * * but when the person appealing from .any judgment or order in any court, or before any tribunal, is a party in a fiduciary capacity, in which he has given bond in this state, for the faithful discharge of his duties, and appeals in the *293 interest of the trust, he shall not be required to give bond, but shall be allowed to appeal, by giving written notice to the court of - his intention to appeal within the time limited for giving bond.”
By this statute three conditions must exist before one desiring to take an appeal from a judgment of a probate court rendered in a proceeding to settle the account of an executor, can perfect his appeal without giving an appeal bond.
1. He must be ‘ ‘a party in a fiduciary capacity. ’ ’ The plaintiff in error being an executor, and his accounts as such the subject of investigation in the probate court, was, of course, before that court in a fiduciary capacity.
2. He must have given bond in this state for the faithful discharg’e of his duties. That it is conceded plaintiff in error had done.
3. The appeal must be “in the interest of the trust.” The contention before us is confined to a construction of the phrase “in the interest of the trust.”
Plaintiff in error contends, that it should be taken to mean, “in respect of the trust, ” or “concerning the trust, ’ ’ and has no reference whatever, to pecuniary or beneficial considerations. So that an appeal should be deemed in the interest of the trust, if it is taken in respect to a matter concerning such trust, although the judgment appealed from was advantageous to the trust estate and increased the trust fund by charging the trustee with an enlarged liabiltity — a liability greater than rested upon him according to his notion. In support of this contention, we are cited to the history of the statutory provision dispensing with appeal bonds by executors, administrators, assignees in insolvency, etc. An inspection of the annual *294 volumes of our statutes, shows that from quite an early period, appeals were allowed to be taken by executors and administrators, who had given bond with sureties in this state, without requiring of them appeal bonds, and this too, without reference to the question, whether the judgment appealed from favorably or unfavorably, affected the estate. 29 Ohio Laws, 78, section 109; 24 Ohio Laws, 131, section 26; 14 Ohio Laws, 166, section 50; S. & C., 612 (vol. 1); S. & C., 1218; 52 Ohio Laws, 105, section 6.
Counsel contend that this policy was inaugurated in this state, at least, as early as 1816, (14 Ohio Laws, 166, section 50) and continued up to the general revision of the statutes, completed in the year 1888, (75 Ohio Laws, 597) when the clause in question was added by the revising commission; and they further contend, that a change of phraseology in a statute occurring in that way, should not be deemed to change its former meaning.
This court, in a number of instances, has had before it the question of the effect to be given to a change of phraseology introduced into a statute by a revision. The doctrine it has established in respect to this matter, is that in the absence of a clear legislative intention to the contrary, a mere change of phraseology thus made, should not change the construction already placed upon the statute, or, the ■ construction it should receive xf the language had not been thus changed. Stannard v. Case, 40 Ohio St., 211; In Ash v. Ash, 9 Ohio St., 387, Sutliff, J., says:
“It is a well established rule, that in putting a construction upon a revised statute, the mere change of the phraseology does not work a change in the established interpretation of the former statute, unless it evidently appears that such a *295 change was intended by the legislature.” The learned judge, citing in support of this proposition: Taylor v. Delancy, 2d. Caine’s Cases, 143; Yates' Case, 4 Johns., 359; Douglass v. Howland, 24 Wend., 45; Gaffney v. Colvill, 6 Hill, 574; Duramus v. Harrison & Whitman, 26 Ala., 326; Mooers v. Bunker, 9 Foster, 431. See also Tyler v. Winslow, 15 Ohio St., 368; State ex rel. v. Commissioners of Shelby County, 36 Ohio St., 326, 330; State ex rel. Baumgardner v. Stockley, 45 Ohio St., 308-9; Allen v. Russell, 39 Ohio St., 336, 337; Hamilton v. Steamboat R. B. Hamilton, 16 Ohio St., 428; State ex rel, Manix v. Auditor of Darke County, 43 Ohio St., 311; State v. Stout, 49 Ohio St., 284. The distinction, however, between a mere change of phraseology and the introduction of an entire clause into a statute, the apparent effect of which is to clearly qualify the former statute, is wide and clear.
Whatever the rule may be as to a mere change of phraseology thus accomplished, the mere circumstances that an entire and clearly qualifying clause has been brought into a statute in the course of a general revision of the statutes of a state, or in a revision of those upon some particular subject, affords but slight, if any ground, for treating it as surplusage. Notwithstanding that its insertion in the statute may have been the act primarily, of the commission appointed to make the revision, yet, its subsequent enactment into a law, should be regarded as the deliberate act of the general assembly. One of the objects sought through a revision of statutes, is in all instances doubtless, simplicity of language. The statute of 1875, (72 Ohio Laws, 87,) providing for a revision of the statutes of this state, expressly authorized the *296 commissioners among other things, “bring together all the statutes and. parts of statutes relating to the same matter, * * * making alterations to reconcile contradictions, supply omissions, and amend imperfections in the original acts, so as to reduce the general statutes into as concise and comprehensive a form as is consistent with a clear expression of the will of the general assembly, rejecting all equivocal and ambiguous words and circuitous and tautological phraseology. ” * * * This authority was broad enough to warrant changes of phraseology, and in fact, expressly authorized it, but the power to alter the meaning of statutes by the insertion of qualifying clauses does not appear. The statutes as revised by the commission appointed for that purpose, were, when reported to the general assembly, passed by that body with such amendments as it chose to make. It is quite reasonable to infer, as we have before shown that this court has done, that mere changes of phraseology made by the commission and adopted by the general assembly, do not change the meaning previously borne by old statutes, unless the difference between the language, of the two statutes evinces an intent to do so. But it seems quite clear to us, that where a new clause has been added to a statute during the course of its revision, which plainly changues and qualifies its former meaning, and the clause is retained by the general assembly when it re-enacts the statute, its operation upon the construction of the statute should not be affected on this account. The whole statute, as thus qualified, should be given that meaning which the words ordinarily bear when employed in that connection and upon that subject. Bringing these views to the consideration of the question *297 before us, we find, that previously to the adoption of the Revised Statutes in 1878, the statutes permitted an executor, etc., without giving an appeal bond, to take an appeal from a judgment affecting the estate, provided he had given bond in this state with sureties. In the Revised Statutes, as thus adopted, this right of appeal was restricted to cases where the appeal was for the pecuniary benefit of the estate or trust, if the language of the added clause is given its ordinary meaning. The added clause is as follows: “And appeals in the interest of the trust.” So that the section 6408, Revised Statutes, now reads as respects this matter of appealing- without bond: “When the person appealing * * * is a party in a fiduciary capacity, in which he has given bond within the state * * * and appeals in the interest of the trust f the added words being italicized. This clause, according to the ordinary meaning of the words when employed in the connection here found, plainly, limits the right of one, who is a party in a fiduciary capacity, to appeal without giving bond to cases where the appeal is taken; for the benefit of the trust. To say that, as counsel for plaintiff in error contend that this should be construed as if the word “interest” meant in “respect of” would be to give no effect at all to the new clause, and also to do violence to the plain sense of the words employed. However strongly the inclination of a court might tend towards a liberal construction of a statute, that principle alone, would not justify, a disregard of the plain and usual meaning of words or clauses found in a statute.
Where exceptions have been filed to an account of an executor or other trustee, he is, at once, in respect of the matters to which the exceptions *298 extend, placed in an attitude of hostility to the trust estate. As to such matters, the estate is in fact represented by the exceptors; they seek to add to it while his pecuniary interests tend to direct his efforts to its diminution. If they prevail in the contest, the funds of the estate are increased; if, on the contrary, he is successful, these funds are diminished. In respect to such controversies the legislature may be presumed to have considered the real attitude borne by the parties, rather than their nominal relation thereto, and, therefore, to have purposely added the clause under consideration to prevent an executor, or other fiduciary party, who, for the time being, and in respect of the matter in hand, should be interested adversely to his trust estate from using a bond to injure an estate where it had been given for its protection and to require of him an independent bond in case he wished to protract a controversy carried on by him adversely to the estate, and for his own pecuniary benefit.

Judgment affirmed.